UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SALVADOR MONDACA-VEGA,

                Petitioner,

          v.

ERIC H. HOLDER, JR., Attorney
General,

                Respondent.

No. CV-04-339-FVS

FINDINGS AND CONCLUSIONS

**THIS MATTER** came before the Court on April 26, 2011, for a bench trial regarding the petitioner's allegation that he is a citizen of the United States.  He was represented by Matt Adams and Martha H. Rickey.  The respondent was represented by Katherine E.M. Goettel and Colin A. Kisor.

**PROCEDURAL HISTORY**

On January 31, 1994, the petitioner was convicted in Yakima County (Washington) Superior Court, under the name Reynaldo Mondaca Carlon, of the crime of second degree assault while armed with a deadly weapon.  He was sentenced to a term of 18 months imprisonment. A representative of the Immigration and Naturalization Service ("INS") interviewed him while he was imprisoned.  On December 14, 1994, the INS issued an Order to Show Cause.  In essence, the INS alleged he is not Reynaldo Mondaca Carlon, a citizen of the United States, but

FINDINGS AND CONCLUSIONS - 1

rather Salvador Mondaca-Vega, a citizen of Mexico.  An Immigration Judge ("IJ") conducted a hearing and determined the INS's allegations are correct; namely, the petitioner is Salvador Mondaca-Vega, a Mexican citizen, not Reynaldo Mondaca Carlon, a United States citizen. The IJ issued a deportation order on November 17, 1998.  The petitioner appealed.  On February 27, 2003, the Bureau of Immigration Appeals ("BIA") affirmed the IJ's order.  The petitioner filed a petition for review with the Ninth Circuit on March 28, 2003.  On July 12, 2004, the Ninth Circuit transferred the case to the United States District Court for the Eastern District of Washington.  28 U.S.C. § 1252(b)(5)(B).  While proceedings were pending in district court, the petitioner ceased communicating with his attorney.  Consequently, on November 15, 2006, this Court returned the case to the Ninth Circuit. Ultimately, the Ninth Circuit excused the petitioner's failure to communicate with his attorney.  On March 29, 2010, the circuit court again transferred the case to this district.  The Court scheduled a trial.  The respondent moved for summary judgment.  The court denied the motion.  Prior to trial, the parties agreed to certain facts.  In addition, they stipulated to the admissibility of a number of exhibits.  A one-day trial took place on April 26, 2011.  The petitioner testified and offered the testimony of one of his daughters.

### SUMMARY OF EVIDENCE

On June 3, 1931, Salvador Mondaca Vega was born to Felix Mondaca and Josefa Vega in Mahone, Mexico.  Salvador's birth was registered in

El Fuerte, Mexico, on June 20th.  (Respondent's Ex. 201.)

On July 17, 1931, Renoldo Mondaca was born to Marin Mondaca and Antonia Carlon in Imperial, California.  (Petitioner's Ex. 2.)

No matter where the petitioner was born, he grew up in El Fuerte, Sinaloa, Mexico.  (Joint Pretrial Order, Agreed Fact 4, at 4.)

The petitioner traveled from Mexico to the United States when he was approximately 20 years old (circa 1951).  (Respondent's Ex. 204, pp. 111-15.)

The petitioner's FBI Rap Sheet indicates the petitioner was removed from the United States under the name Salvador Mondaca during July and September of 1951.  (Respondent's Ex. 230.)

On September 8, 1952, a person claiming to be Salvador Mondaca applied for a Social Security card.  (Respondent's Ex. 214; Joint Pretrial Order, Agreed Fact 7, at 4.)  The applicant listed Feliz Mondaca as his father and Josefa Vega as his mother.  The applicant said he was born on April 13, 1931.  *Id.*  Apparently, his application was rejected because he failed to establish United States citizenship. There is no handwriting on the application.  Thus, no handwriting comparison can be performed.

On September 24, 1952, Reynaldo Mondaca Carlon registered with the Selective Service Board in Salinas, California.  On October 18, 1952, he was found unacceptable for induction.  (Joint Pretrial Order, Agreed Fact 6, at 4.)  There is no handwriting on the application. Thus, no handwriting comparison can be performed.  (Petitioner's Ex. 9.)

FINDINGS AND CONCLUSIONS - 3

Petitioner's Exhibit 9 is a single page.  Copies of three documents are set forth on Exhibit 9.  One is a Selective Service certificate.  Another is Reynaldo C. Mondaca's Social Security card. The latter was issued many months after the former.

On November 10, 1952, the petitioner was deported at San Ysidro, California.  (Respondent's Exhibit 207.)

On May 11, 1953, a person named Salvador Mondaca-Vega was served with a warrant by the Immigration and Naturalization Service ("INS") while detained in the King County (Washington) Jail.  (Respondent's Exhibit 205.)

On May 19, 1953, the person who was served with the warrant was fingerprinted.  The fingerprints are those of the petitioner. (Respondent's Ex. 213; Joint Pretrial Order, Agreed Fact 9, at 5.)

On May 22, 1953, the petitioner was deported from the United States at San Ysidro, California, under the name Salvador Mondaca-Vega.  (Respondent's Ex. 204, pp. 150-53.)

On May 23, 1953, someone applied for a Social Security card in Calexico, California, under the name Reynaldo C. Mondaca. (Petitioner's Ex. 5.)

Handwriting analysis suggests, without firmly establishing, that it was the Petitioner who signed the Social Security application. (Respondent's Exs. 216 and 217; Joint Pretrial Order, Agreed Fact 5, at 4.)

The petitioner would have had to present a birth certificate in order to obtain a Social Security number.  (Respondent's Ex. 204, p.

FINDINGS AND CONCLUSIONS - 4

137.)

The Social Security Administration issued a Social Security card to the petitioner.  The name on the card is Reynaldo C. Mondaca. (Petitioner's Ex. 9.)  The Social Security number is 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. (Joint Pretrial Order, Agreed Fact 18, at 7.)

The petitioner has consistently used Social Security number 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.  (Respondent's Ex. 204, p. 120.)  He is qualified to receive Social Security benefits.  (Joint Pretrial Order, Agreed Fact 18, at 7.)

On July 28, 1953, the petitioner was deported from the United States under the name Salvador Mondaca-Vega.  (Respondent's Ex. 230.)

On September 15, 1954, an INS official issued a warrant for the detention of the petitioner, who was being held by the Yakima County Sheriff under the name Salvador Mondaca-Vega.  (Respondent's Ex. 209.)

On September 18th, the petitioner was fingerprinted by the INS while in custody in Seattle, Washington.  (Respondent's Ex. 213; Joint Pretrial Order, Agreed Fact 9, at 5.)

Fingerprint analysis has confirmed that the fingerprints which were taken on September 18, 1954, are those of the petitioner.  *Id.*

On September 20th, the petitioner gave a sworn statement to an INS official in Seattle.  The petitioner signed the statement.  The petitioner made several statements to the INS official.  Among other things, he averred that his name is Salvador Mondaca-Vega and that he was born on "April 16, 1931, at El Puerte, Sin., Mexico." (Respondent's Ex. 212; Joint Pretrial Order, Agreed Fact 8, at 4.)

FINDINGS AND CONCLUSIONS - 5

On September 20, 1956, the petitioner was granted voluntary removal to Mexico under the name Salvador Mondaca-Vega. (Respondent's Ex. 230.)

The petitioner accepted voluntary departure ten to twenty times under the name Salvador Mondaca-Vega. (Joint Pretrial Order, Agreed Fact 24, at 8.)

In approximately 1959, the Petitioner began a liaison with Aurelia Estrella. Miss Estrella bore him nine children. The first six were born in Mexico. (Respondent's Ex. 204, pp. 163-65; Joint Pretrial Order, Agreed Fact 4, at 12.)

On January 11, 1966, the petitioner was deported under the name Jose Valdez-Vega. (Respondent's Ex. 230.)

On or about October 20, 1969, the petitioner was charged with a crime in Bakersfield, California, under the name Reynaldo Carlen Mondaca. (Respondent's Ex. 230.)

The date of October 28, 1969, is the last time the name "Salvador Vega Mondaca" appears on the petitioner's FBI Rap Sheet. (Respondent's Ex. 230.)

On August 7, 1970, the petitioner and Miss Estrella were married in Reno, Nevada. (Respondent's Ex. 230.)

On February 9, 1973, a Border Patrol Agent in Bakersfield, California, wrote to the Officer in Charge of the United States INS office in Mazatlan, Sinaloa, Mexico, asking him to locate a birth certificate for Salvador Mondaca-Vega, whose date of birth was April 16, 1931. (Respondent's Ex. 228.)

FINDINGS AND CONCLUSIONS - 6

On March 29, 1973, an official in the American Consulate in Mazatlan sent a copy of Salvador Mondaca-Vega's birth certificate to the Border Patrol Agent in Bakersfield.  (Respondent's Ex. 229.)

On November 24, 1974, Mrs. Mondaca Estrella arranged for daughters Consuelo and Guadalupe to be baptized in the Parish of Our Lady of Guadalupe, Juan Jose Rios, Sinaloa.  The baptismal certificates list Mrs. Aurelia Estrella as the girls' mother and Reynaldo Mondaca as their father.  (Petitioner's Ex. 11.)

On November 9, 1976, the petitioner presented his daughter, Mireya Mondaca Estrella, to Enrique P. Canado, the Officer of the Civil Registry in El Fuerte, Sinaloa, Mexico.  Mireya had been born in El Fuerte on May 11, 1960.  The petitioner applied for a birth certificate for her.  It is not entirely clear what occurred in the proceeding before Mr. Canado.  The birth certificate indicates two witnesses confirmed Mr. Mondaca "has residence in Juan Jose Rios, Guasave, Sinaloa."  (Petitioner's Ex. 11.) In addition, the petitioner presented his Nevada marriage certificate.  Presumably, this was necessary in order to document he was married to Mireya's mother.  A birth certificate was issued to Mireya.  It lists her father as "Reynaldo C. Mondaca."  *Id.*  It lists her paternal grandparents as, respectively, "Marin Mondaca" and "Antonia Carlon."  *Id.*

During February of 1977, the petitioner filed an affidavit, under the name Reynaldo Mondaca, in support of his application for United States citizenship for several of his children.  (*See, e.g.,*

FINDINGS AND CONCLUSIONS - 7

Petitioner's Ex. 15.)  The INS issued Certificates of Citizenship to four of his children; namely, Maria del Rosario Mondaca, Salvador Mondaca, Consuelo Mondaca, and Guadalupe Mondaca. (Petitioner's Ex. 17.)

On February 22, 1977, the petitioner filed a relative immigrant visa petition, under the name Reynaldo Mondaca, on behalf of his wife, Aurelia Estrella de Mondaca, and two of his children, Rudolfo Mondaca and Mireya Mondaca.  On April 13, 1977, the INS issued a "Notice of Approval of Relative Immigrant Visa Petition." (Petitioner's Ex. 12.)

During November of 1977, the INS adjusted the status of Petitioner's wife, Aurelia Estrella de Mondaca, and one of his daughters, Mireya Estrella Mondaca, to that of lawful permanent resident. (Petitioner's Exs. 13 and 14.)

During September of 1980, the petitioner was arrested based upon probable cause to believe he had transported Mexican citizens in the United States.  He gave the name "Reynaldo Carlon Mondaca."  He was charged with crimes in the District of Arizona.  Neither the INS nor the United States Attorney questioned his assertion that his name is Reynaldo Carlon Mondaca. (Petitioner's Exs. 18 and 19.)

On March 23, 1983, an INS officer requested an Assistant United States Attorney in the Western District of Washington to prosecute the petitioner for a violation of immigration law.  The AUSA declined to seek an indictment.  As a result, the INS officer sent a letter to a fellow officer in Fresno, California, recommending further investigation of the petitioner's identity.  No action was taken to

FINDINGS AND CONCLUSIONS - 8

deport the petitioner.  (Petitioner's Ex. 20.)

On January 31, 1994, the petitioner was convicted in Yakima County Superior Court of the crime of second degree assault while armed with a deadly weapon.  (Respondent's Ex. 234 at 2.)

On December 14, 1994, the INS issued an Order to Show Cause. (Joint Pretrial Order, Agreed Fact 20, at 7.)

On December 15, 1994, the petitioner's wife, Aurelia Mondaca, executed a sworn, written statement.  The first paragraph after the preamble provides:

> I first met Reynaldo Mondaca in 1955 in El Fuerte, Sinaloa, Mexico.  In this time I met his mother Antonia Carlon and his father Marin Mondaca.  When I was around the family, his parents and other family members always called him Reynaldo. He was always called Reynaldo Mondaca by himself and all of his family and friends.  This was the rancho of his birth.

(Petitioner's Ex. 25.)  The third paragraph of Mrs. Mondaca's written statement provides:

> From the time I first met him[,] . . . [h]e told me that he had been born in Imperial, California and that his parents were up there working.  They had returned to Mexico when he was a small baby and he grew up there on the ranch.

*Id.*  The final paragraph of Mrs. Mondaca's written statement provides:

> During all of the this time I have known him to be Reynaldo Mondaca.  I am totally convinced this is his correct name because that is the name he was called by all of his family and friends at the ranch where he was born and grew up in Mexico.

*Id.*

On December 19, 1994, Mrs. Mondaca submitted a corrected

FINDINGS AND CONCLUSIONS - 9

statement explaining she had not meant to say, in her December 15th statement, that her husband was born on a ranch near El Fuerte. (Petitioner's Ex. 25.)

An IJ conducted a hearing concerning the INS's allegations.  The hearing occurred on three, widely-separated days:  August 13, 1997, April 29, 1998, and November 17, 1998.

On April 27, 1998, the Secretary of State issued a United States passport to Petitioner under the name Reynaldo Carlon Mondaca.  The Petitioner lost the passport.  (Joint Pretrial Order, Agreed Fact 15, at 6.)

On April 29, 1998, the petitioner testified before an Immigration Judge.  (Respondent's Ex. 204, pp. 92-199.)

The petitioner had no explanation for why he used the name Salvador Mondaca Vega.  (Ex. 204, p. 116.)

The petitioner denied knowing anyone by that name, even though a person by that name was born in the village in which he grew up during the same year he was born.  *Id.*

The petitioner could not remember whether he applied for a social security number under the name Salvador Mondaca Vega.  (Ex. 204, p. 121 and p. 146.)

The petitioner testified that once he gave the name Salvador Mondaca Vega to the INS, he thought it best to continue using that name, even though it wasn't his true name.  (Ex. 204, p. 142.)

The petitioner denied he carried his birth certificate and social security card with him.  (Ex. 204, pp. 134-36.)

FINDINGS AND CONCLUSIONS - 10

The petitioner had no explanation for why he continued using the name "Salvador Mondaca Vega" after obtaining a social security card under the name "Reynaldo Mondaca." (Ex. 204, pp. 137-38.)

The petitioner had no explanation for why he stopped using the name "Salvador Mondaca Vega" and started using the name "Reynaldo Mondaca Carlon." *Id.*

On April 29, 1998, the petitioner's wife, Aurelia Mondaca, testified before the IJ. (Petitioner's Ex. 24; Respondent's Ex. 204, pp. 157-176.)

She said she met the Petitioner in 1958 in El Fuerte. (Respondent's Ex. 204, p. 82.)

She said his parents names were "Marin Mondaca" and "Antonia Carlon." (Ex. 204, p. 83.)

She said no one in El Fuerte referred to him as "Salvador Mondaca Vega." *Id.*

On September 17, 2005, the petitioner obtained a replacement passport from the Secretary of State. (Joint Pretrial Order, Agreed Fact 16, at 6.)

On July 16, 2010, one of the respondent's attorneys took the petitioner's deposition. (Respondent's Ex. 203.)

He insisted he used the name "Salvador Mondaca Vega" only once. (Respondent's Ex. 203 at 7-8.)

He said that since he lacked papers to document he was Reynaldo Mondaca Carlon, a United States citizen, his friends counseled him to continue using the name Salvador Mondaca Vega so he would be released

FINDINGS AND CONCLUSIONS - 11

from custody more quickly.  *Id.* at 9.

He could not remember why he chose to use the name "Salvador Mondaca Vega."  *Id.* at 10, 16-17.

He could not remember registering with a Selective Service Board under the name Renoldo Mondaca.  *Id.* at 36.

He insisted he had been deported only once.  *Id.* at 41, 83.  He denied ever accepting voluntary departure.  *Id.* at 41.

He denied admitting to an INS official in 1954 that his name is Salvador Mondaca-Vega.  *Id.* at 44, 48.  Later, he expressed great confusion about the 1954 statement.  *Id.* at 80-83.

He said he usually traveled to El Fuerte by bus.  *Id.* at 66.  He said he had no trouble reentering the United States because he had his papers.  *Id.* at 66, 73.

On April 20, 2011, the respondent filed a paper that is entitled "Notice of Passport Revocation."  The Notice states the Secretary revoked the petitioner's passport on April 19, 2011.

On April 26, 2011, the Court conducted a bench trial.  The petitioner testified.

The petitioner's memory at trial was much clearer than it was during his deposition.

At trial, the petitioner testified he traveled to the United States at some point between the age 20 and the age 22.  He was "kicked out" because he "didn't have [a] passport."

He returned to El Fuerte.  His mother gave him his birth certificate.  He learned he is a United States citizen.

FINDINGS AND CONCLUSIONS - 12

He "always" had his United States birth certificate with him.

He said he gave a false name to the INS at the suggestion of his friends.  They told him that he would remain in jail longer if he used his true name.

After he was deported under a false name, he obtained his United States birth certificate.  Thereafter, he did not have any trouble coming back into the United States.

He could not recall why he used the name Salvador Mondaca-Vega.

He could not remember registering with a Selective Service Board under the name Renoldo Mondaca.

The petitioner's daughter, Consuelo, testified at the 2011 trial.

She was born in Mexico on December 28, 1969.  She has obtained derivative citizenship through her father.

She is now married.  Her married name is Consuelo Mondaca-Luna.

She is employed as a school counselor.

She said she had always known her father as "Reynaldo Mondaca." She said her mother had always referred to her father as "Reynaldo," and she had never heard outside the family refer to him by any other name.

She said she saw a copy of her father's birth certificate when she was growing up.

During her early 20s, she and her mother traveled to a detention facility in Seattle, Washington, where her father was being held.  She told a member of the staff that she was prepared to post bail for "Reynaldo Mondaca."  The staff member said told her there was no one

FINDINGS AND CONCLUSIONS - 13

by that name in the facility.  The staff member told them a man named "Salvador Mondaca" was detained in the facility.  This man turned out to be her father.  She asked him why he was being held under the name "Salvador Mondaca."  All he said was that "it was a mixup."

During the April 26th bench trial, the petitioner did not indicate whether he intends to challenge the Secretary's decision to revoke his passport.  Given the uncertain status of the Secretary's decision, the Court will assume, for purposes of 8 U.S.C. § 1252(b)(5)(B), that the petitioner continues to possess a valid passport.

**FINDINGS CONCERNING DISPUTED ALLEGATIONS**

Most of the evidence that is summarized above is undisputed.  The following are the Court's findings concerning disputed allegations that are material to the resolution of the petitioner's citizenship:

A. It is highly improbable the petitioner obtained the birth certificate for Renoldo Mondaca from his mother.

1. On May 11, 1953, the petitioner was detained by the INS in the King County Jail.  If the petitioner had possessed the birth certificate for Renoldo Mondaca at that time, and if it was his birth certificate, he would have presented it to the INS.

2. On May 22, 1953, the INS deported the petitioner at San Ysidro, California, under the name Salvador Mondaca-Vega.

3. On May 23, 1953, the petitioner applied for a Social Security card in Calexico, California, under the name Reynaldo C. Mondaca.

4. He would have had to present a birth certificate in order to

obtain a Social Security number.

5. No matter which route one takes, it is at least 840 miles by road from San Ysidro to El Fuerte, and it is at least 730 miles from El Fuerte to Calexico.  *See* Google Maps, http://maps.google.com (last visited July 11, 2011).

6. The petitioner testified he sometimes traveled by bus to El Fuerte.

7. It would have been extremely difficult, if not impossible, for the petitioner to travel from San Ysidro to El Fuerte, and from El Fuerte to Calexico, between May 22nd and May 23rd.

8. The petitioner did not obtain the birth certificate for Renoldo Mondaca in El Fuerte on either May 22nd or May 23rd.

9. It is approximately 125 miles from San Ysidro to Calexico, California.  Thus, it would have been possible for the petitioner to travel from San Ysidro to Calexico between the 22nd and 23rd of May.

10. The petitioner obtained the birth certificate for Renoldo Mondaca at some location near the border between the United States and Mexico on either May 22nd or May 23rd.

B. The petitioner's continued use of the name "Salvador Mondaca-Vega" after May 23, 1953, is inexplicable if he is Renoldo Mondaca.

1. On July 28, 1953, the petitioner was deported from the United States under the name Salvador Mondaca-Vega.  This was the middle of the Summer; a busy time of year for an agricultural laborer.  It was not in the petitioner's financial interest to be removed from the United States at this time.  Two months earlier, he had submitted a

FINDINGS AND CONCLUSIONS - 15

United States birth certificate to the Social Security Administration. If the petitioner is Reynaldo C. Mondaca, it would have made sense for him to present the birth certificate to the INS when detained.[1]

2. On September 15, 1954, an INS official issued a warrant for the detention of the petitioner, who was being held by the Yakima County Sheriff under the name Salvador Mondaca-Vega.  There would have been a great deal of agricultural work in Yakima County during September and October.  It was in the petitioner's financial interest to remain in the United States.  If the petitioner is Reynaldo C. Mondaca, it would have made sense for him to present his birth certificate and Social Security card to the INS.  He did not do so. To the contrary, on September 20, 1954, he stated under oath that his name is Salvador Mondaca-Vega and that he was born on "April 16, 1931, at El Puerte, Sin., Mexico."

3. The date of birth provided by the petitioner (April 16, 1931) is inconsistent with the date of birth on Salvador Mondaca-Vega's birth certificate (June 3, 1931).  The Court has considered the discrepancy in light of the record as a whole.  On September 8, 1952 (*i.e.,* two years earlier) a person claiming to be Salvador Mondaca applied for a Social Security card.  The applicant correctly identified the parents of Salvador Mondaca-Vega, which suggests he was the true Salvador.  He gave the date of April 13, 1931, as his birth date.

---

[1]It is unclear whether he had received his Social Security card by July 28th.

FINDINGS AND CONCLUSIONS - 16

4. The information that the petitioner provided to the INS on September 20, 1954, is substantially consistent with the information that is contained in the birth certificate for Salvador Mondaca-Vega.

5. The petitioner would not have been able to provide both Salvador Mondaca-Vega's year of birth and area of birth unless either he is Salvador or he once knew him.

C. The petitioner's testimony is unpersuasive.

1. The petitioner used the name Salvador Mondaca-Vega throughout the 1950s and, to a lesser extent, the 1960s despite the fact he had obtained a United States birth certificate and a Social Security card. He has made inconsistent statements with respect to whether he typically carried those documents with him.  During his 2010 deposition, he indicated he used the name Salvador Mondaca-Vega on the advice of persons who were detained with him.  He claims they told him he would be released sooner if he did not dispute that he is Salvador Mondaca-Vega.  He might have followed such advice before he had obtained a United States birth certificate and Social Security card, but not after.  It is unlikely a person who has a United States birth certificate and a Social Security card would state under oath that he is a citizen of Mexico; unless the birth certificate was not his and he had obtained the Social Security card by means of fraud.  In that case, he well might state his true name, *viz.*, Salvador Mondaca-Vega.

2. The petitioner cannot explain why he ceased using the name Salvador Mondaca-Vega and began using the name Reynaldo C. Mondaca. The most probable explanation is his marriage to Aurelia Estrella in

FINDINGS AND CONCLUSIONS - 17

Reno, Nevada, on August 7, 1970.  She had borne him five children.

Four more would follow.  He was in a much better position to provide

for his wife and children as Reynaldo C. Mondaca, a citizen of the

United States, than as Salvador Mondaca-Vega, a citizen of Mexico.

For example, as Reynaldo C. Mondaca, he was able to obtain derivative

citizenship for his wife and Mexican-born children.

D. Aurelia Mondaca Estrella's testimony is unpersuasive.

1. On December 15, 1994, the petitioner's wife, Aurelia Mondaca

Estrella, submitted a written statement to the INS.  As originally

written, her statement was inconsistent.  On the one hand, she said

the petitioner told her he had been born in Imperial, California.  On

the other hand, she twice said he had been born on a ranch in El

Fuerte.  Someone noticed the inconsistency.  On December 19th, she

submitted a correction in which she said that she had not meant to say

the petitioner was born on a ranch in Mexico.

2. On April 29, 1998, Mrs. Mondaca testified before the IJ in

support of her husband's allegation that he is Reynaldo Mondaca.  The

IJ had an opportunity to observe her demeanor and consider her

testimony in light of the record as a whole.  The IJ discounted her

testimony.

3. The Court is unpersuaded by the testimony of Aurelia Mondaca

Estrella.  To begin with, her initial written statement to the INS was

inconsistent with respect to the petitioner's place of birth.  In

addition, none of the information she provided about the petitioner's

parents and siblings reflected intimate knowledge; that is to say,

FINDINGS AND CONCLUSIONS - 18

none of her statements about the petitioner's family revealed details that only could have come from personal knowledge. Finally, the IJ observed Mrs. Mondaca while she testified and he discounted her testimony.

E. The testimony of Consuelo Mondaca-Luna is credible, but it has limited probative value

1. The petitioner's daughter, Consuelo Mondaca-Luna, testified at the trial that was held on April 26, 2011. She testified truthfully to the best of her ability. Nevertheless, her testimony has limited probative value. To begin with, she was born on December 28, 1969. By that time, the petitioner had largely ceased using the name Salvador Mondaca-Vega. In addition, the petitioner concealed from her the full extent of his use of the name "Salvador Mondaca-Vega."

**CONCLUSIONS OF LAW**

This proceeding is a type of declaratory judgment action. 8 U.S.C. § 1252(b)(5)(B). The petitioner seeks a determination that he is a citizen of the United States. Although this case has a lengthy history, it is the Court's task to make a de novo finding with respect to the petitioner's citizenship. *Sanchez-Martinez v. INS*, 714 F.2d 72, 74 n.1 (9th Cir.1983) (per curiam), *cert. denied*, 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984).

1. The petitioner bears the initial burden of proving United States citizenship by a preponderance of the evidence. *Id.* at 74 (citing *Yee Tung Gay v. Rusk*, 290 F.2d 630, 631 (9th Cir.1961)).

2. The petitioner has carried his burden in either of two ways.

During the 1970s, the INS determined his wife and Mexican-born children were entitled to derivative citizenship through him.  In addition, the Secretary of State issued a United States passport to him on April 27, 1998.[2]

3. Where, as here, a department within the Executive Branch has determined a person is a citizen of the United States, the DHS may rebut the determination by presenting clear, unequivocal, and convincing evidence that the prior determination was a product of fraud or error.  *Lim v. Mitchell*, 431 F.2d 197, 199 (9th Cir.1970); *Lee Hon Lung v. Dulles*, 261 F.2d 719, 724 (9th Cir.1958).  The clear-and-convincing standard is a more demanding standard than the preponderance-of-the-evidence standard.  *Murphy v. INS*, 54 F.3d 605, 610 (9th Cir.1995).  In order to satisfy the clear-and-convincing standard, the respondent must demonstrate it is highly improbable the petitioner is Renoldo Mondaca.  Stated alternatively, the respondent must demonstrate it is highly probable the petitioner is Salvador Mondaca Vega.  *See* Ninth Circuit Model Civil Jury Instruction § 1.4 ("When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.").

4. The petitioner has a birth certificate for Renoldo Mondaca. He alleges he obtained it from his mother.  This allegation is highly improbable.  He was deported on May 22, 1953, at San Ysidro,

[2]The Secretary issued a replacement passport on September 17, 2005.

FINDINGS AND CONCLUSIONS - 20

California.  It is highly improbable he had a birth certificate in his possession when he left the United States.  It is highly probable he presented a United States birth certificate to the Social Security Administration in Calexico, California, the next day.  He did not have time to travel to El Fuerte to retrieve a birth certificate.  He must have obtained it from some location near the border between the United States and Mexico.  The Social Security Administration issued a Social Security card to the petitioner based upon the birth certificate.  His behavior thereafter is inexplicable if he truly is Renoldo Mondaca.  Why would he later state to the INS under oath that he is a citizen of Mexico if he had a United States birth certificate and a Social Security card?  The petitioner alleges he did so in order to obtain release more quickly.  This allegation is highly improbable.  To the contrary, it is highly probable he told the truth on September 20, 1954.  That is to say, it is highly probable he is Salvador Mondaca-Vega and he was born in Mexico.  In sum, the respondent has carried his burden.  He has presented clear, unequivocal, and convincing evidence the petitioner is not a citizen of the United States.

**THE COURT SO FINDS AND CONCLUDES.**  The District Court Executive is hereby directed to enter these findings and conclusion, transmit a copy to the Ninth Circuit, furnish copies to counsel, and close this case.

**DATED** this    14th    day of July, 2011.

s/ Fred Van Sickle
Fred Van Sickle
Senior United States District Judge

FINDINGS AND CONCLUSIONS - 21